```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,                :
                                         :       **MEMORANDUM AND ORDER**
                -against-                :
                                         :       08-CR-902 (DLI)(MDG)
ROMAN MAVASHEV,                          :
                                         :
                            Defendant.   :
------------------------------------------------------------- x
```
**DORA L. IRIZARRY, United States District Judge:**

Defendant Roman Mavashev is charged with conspiracy to commit bank fraud, conspiracy to commit wire fraud, and three counts of bank fraud, in violation of 18 U.S.C. §§ 1343, 1344, 1349, and 3551. Defendant moves to dismiss the indictment for failure to state a federal offense.[1] For the reasons set forth below, the motion is denied.

## I.    Background

On August 12, 2008, the Federal Bureau of Investigation filed a sealed complaint against the defendant, accusing him of defrauding several mortgage lenders in the Eastern District of New York. On December 18, 2008, defendant was indicted on five counts, each stemming from the same general allegation that he submitted loan applications containing materially false information in order to purchase multiple properties. In the introduction to this indictment, the government described two of the alleged victims, Fremont Investment and Loan ("Fremont") and Aurora Loan Services ("Aurora"), as "wholly-owned subsidiar[ies]" of, respectively, Fremont General Corporation and Lehman Brothers, both "federally chartered bank[s], the deposits of which were insured by the Federal Deposit Insurance Corporation" ("FDIC"). The government

---

[1] Defendant does not cite a Federal Rule of Criminal Procedure pursuant to which he brings the instant motion. The court construes it as a motion pursuant to Fed. R. Crim. P. 12(b)(3)(B), which allows for a pretrial claim that "the indictment . . . fails to invoke the court's jurisdiction or to state an offense."

described a third alleged victim, Long Beach Mortgage Company ("Long Beach"), as a "division" of Washington Mutual, which it also characterized as a federally chartered bank with FDIC-insured deposits.

On October 16, 2009, defendant filed the instant motion, claiming that the indictment failed to establish federal jurisdiction because it did not allege that the defrauded victims were "financial institutions" under the meaning of the relevant criminal statutes. (Mot. to Dismiss at 2.) Specifically, defendant argued that a wholly-owned subsidiary or division of a bank insured by the FDIC was not "itself an FDIC insured institution for bank fraud purposes." (*Id.* at 3.) Defendant also moved to strike from Count Two (conspiracy to commit wire fraud) the allegation that his offense "affected . . . financial institutions."[2] The government opposed the motion, contending that the allegations of a scheme to defraud one or more financial institutions, including wholly-owned subsidiaries thereof, must be deemed true on a motion to dismiss, and, therefore, were sufficient. (Resp. to Mot. to Dismiss at 2–3.)

On November 20, 2009, just as the court was about to render its decision, the government filed a superseding indictment, which differs from the original in two ways. First, the indictment now alleges that Fremont *itself* "was a bank, the deposits of which were insured by the [FDIC]." (Superseding Indictment at 1.) Second, the indictment now alleges that defendant *directly* defrauded Lehman Brothers and Washington Mutual—both FDIC-insured banks—through their respective wholly-owned subsidiaries, Aurora and Long Beach.[3] By letter dated November 20,

---

[2] (*Id.* at 4–5.) Because the argument underlying both motions is the same, the court will consider them together.

[3] (*See id.* at 5–6.) Count One of the indictment now alleges, in relevant part, that defendant conspired to defraud Fremont, Lehman Brothers (through its subsidiary, Aurora), and Washington Mutual (through its subsidiary, Long Beach). (*Id.* at 3.) Count Two similarly alleges that defendant "conspire[d] . . . to defraud . . . by means of wire communication in interstate

2

2009, the government further notified the court and counsel of its belief that the superseding indictment rendered defendant's motion moot. While defendant filed a letter regarding this case thereafter (*See* Docket Entry No. 31), he did not respond to the government's mootness argument.

At a November 25, 2009 status conference, the government maintained that its superseding indictment mooted the dismissal motion because it alleges that all the victims are FDIC-insured banks in their own right, as opposed to subsidiaries. The court agrees. Upon inquiry by the court as to defendant's position, defendant disagreed and objected to the court's decision.[4] Out of an abundance of caution, despite the mootness and in light of defendant's objection, the court addresses the merits of his motion. As discussed in more detail below, defendant's argument regarding wholly-owned subsidiaries is insufficient to clear the high bar required for dismissal of the original indictment. Accordingly, his motion to dismiss the original indictment is denied.

## II. Discussion

### A. Legal Standard

"A motion to dismiss an indictment must satisfy a high standard." *U.S. v. Brooks*, 2009 WL 3644122, at *2 (E.D.N.Y. Oct. 27, 2009) (citations and internal quotations omitted). This is because "[a]n indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De Le Pava*, 268 F.3d 157, 162 (2d Cir. 2001)

---

commerce," Fremont, Lehman Brothers (through Aurora), and Washington Mutual (through Long Beach). (*Id.* at 4.) Counts Three, Four, and Five allege that defendant defrauded, respectively, Fremont, Lehman Brothers (through Aurora), and Washington Mutual (through Long Beach). (*Id.* at 5–6.)

[4] Defendant did not set forth the basis of his objection, other than to reiterate his original position. The government, for its part, does not concede that the filing of the superseding indictment is acknowledgment of any defect in the original.

3

(citation omitted). A court must "accept[] the facts alleged in the indictment as true and determine[] only whether the indictment is 'valid on its face.'" *Id.* (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).

The United States Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [they] . . . fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (citations and internal quotations omitted). "Essentially, the indictment must . . . be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Brooks*, 2009 WL 3644122, at *2 (citing FED. R. CRIM. P. 7(c)(1)).

### B. Wholly-Owned Subsidiaries of "Financial Institutions"

"Financial institution," for the purposes of Title 18 of the United States Code, can have a number of different meanings. *See generally* 18 U.S.C.A. § 20 (West 2009) (encompassing, *e.g.*, credit unions, Federal home loan banks, and small business investment companies). The most relevant definition, which both parties acknowledge, is "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)." 18 U.S.C.A. § 20(1) (West 2009). The parties dispute, however, whether this definition encompasses a wholly-owned subsidiary of such an institution, which is not itself insured by the FDIC. This appears to be an issue that has not been directly decided by this Circuit.

The government cites to the First Circuit for its proposition that "financial institution" can encompass a wholly-owned subsidiary. *See United States v. Walsh*, 75 F.3d 1, 9 (1st Cir. 1996) ("a defendant can violate section 1344 by submitting the dishonest loan application to an entity which is not itself a federally insured institution") (citing *United States v. Brandon*, 17 F.3d 409, 424 n.11 (1st Cir. 1994), *cert. denied*, 513 U.S. 820 (1994)). In *Walsh*, the defendant appealed a bank fraud conviction on the grounds that the defrauded institution was not itself federally insured, but was instead a mere subsidiary of a federally insured bank. *See* 75 F.3d at 9. In rejecting this appeal, the First Circuit stated that "for the purposes underlying section 1344, the mortgage fraud perpetrated against [the wholly-owned subsidiary] was effectively a fraud against [the federally insured bank]." *Id.*

Defendant cites to the Seventh Circuit for the opposite proposition. *See United States v. White*, 882 F.2d 250, 251–52 (7th Cir. 1989). In *White*, the Seventh Circuit considered an appeal of a conviction for making false statements to a bank, in violation of 18 U.S.C. § 1014. *See* 882 F.2d at 251. The defendant claimed that the defrauded institution, a leasing corporation, was not a FDIC-insured bank for the purposes of § 1014. *Id.* at 250–51. The Seventh Circuit agreed, noting that the defendant "made his false statements to . . . a corporation that is not a bank, that does not have federally insured deposits—that does not have deposits, period." *Id.* at 251.

The court finds the First Circuit's analysis more relevant to the instant motion. First, the defendant in *White* was appealing a § 1014 conviction, unlike the bank fraud at issue in *Walsh* and the case at bar. 882 F.2d at 250–51. More importantly, the defrauded institution in *White* was a leasing corporation, distinguishable from Fremont, Aurora, and Long Beach, all of whom are in the business of making loans. (*See* Superseding Indictment at 2.) This makes them far more

5

analogous to the defrauded subsidiary in *Walsh*, Dime Real Estate Services of Massachusetts, Inc., which was also in the business of making mortgage loans.[5]

The Second Circuit has addressed the issue only indirectly. *See United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998). In *Bouyea*, it considered the appeal of a defendant convicted of wire fraud. *Id.* at 194. The defrauded institution, as in the case at bar, was a wholly-owned subsidiary of a financial institution. *Id.* at 195. Citing the Seventh Circuit's decision in *White*, the *Bouyea* court found that the victim was therefore *not* a financial institution within the meaning of 18 U.S.C. § 20. *Id.* Nevertheless, it held that "the evidence . . . was sufficient to . . . conclude that, by defrauding a wholly-owned subsidiary of [the financial institution], Bouyea did 'affect' [the] financial institution . . . ." *Id.*

With the aforementioned case law providing the necessary foundation, the court has little difficulty rejecting defendant's argument. Accepting the government's allegations for the purposes of this motion, defendant has defrauded several federally-insured banks via their wholly-owned subsidiaries. Applying *Bouyea*, in order to *convict* defendant for these actions, the government must present evidence that the fraud "affected" the parent financial institutions. *See* 152 F.3d at 195; *see also United States v. Agne*, 214 F.3d 47, 51–52 (1st Cir. 2000) (holding, in the context of a statute of limitations analysis, "at minimum there needs to be some impact on the financial institution to support a [wire fraud] conviction"). This has nothing to do, however, with the "high standard" defendant must satisfy in order to defeat the indictment itself. *See Brooks*,

---

[5] *Compare* 75 F.3d at 3, *with White*, 882 F.2d at 251–52. Besides the First Circuit, other circuits have similarly interpreted § 1344 "to mean that the victim or intended victim of the fraud need not be the financial institution, so long as the institution is exposed to a risk of loss or civil liability." Heidi Huntington Mayor et al., *Financial Institutions Fraud*, 31 AM. CRIM. L. REV. 647, 664 (1994) (citing Fifth and Tenth Circuits); *see also United States v. Schultz*, 17 F.3d 723, 726 (5th Cir. 1994) (indicating that the government could satisfy the "financial institution" element of § 1344 with a showing that a subsidiary was insured through its parent institution).

2009 WL 3644122, at *2. The indictment both "contains the elements of the offense charged" and "enables [defendant] to . . . bar . . . future prosecutions for the same offense." *Hamling*, 418 U.S. at 117–18. It is therefore sufficient to survive a motion to dismiss.

### C. Amended Definition of "Financial Institution"

It should be noted that the definition of "financial institution" was expanded in May 2009. *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(a)(3) (2009). "Financial institution" now encompasses "a *mortgage lending business* . . . or any person or entity that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974." 18 U.S.C.A. § 20(10) (West 2009) (emphasis added). A "mortgage lending business" is in turn defined as "an organization which finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations, and whose activities affect interstate or foreign commerce." 18 U.S.C.A. § 27 (West 2009).

Given that the indictment refers to Fremont, Aurora and Long Beach as "mortgage lenders," and alleges a scheme to "induce them to lend money . . . for use in purchasing real estate" (Superseding Indictment at 2), the clear language of 18 U.S.C. § 20 would seem to make them "financial institutions" for the purposes of the bank and wire fraud statutes. *See United States v. Kinzler*, 55 F.3d 70, 72 (2d Cir. 1995) ("When the language of the statute is clear and does not contradict a clearly expressed legislative intent, our inquiry is complete and the language controls."); *see also* Pub. L. No. 111-21 (2009) (expanding the scope of 18 U.S.C. § 20 and subtitled "An Act to improve enforcement of . . . *financial institution fraud*") (emphasis added). However, the amendment to 18 U.S.C. § 20 came over three years after defendant's

alleged fraud. As applying the new definition to defendant retroactively might create an ex post facto issue, the court declines to do so.[6]

**III.    Conclusion**

For the foregoing reasons, the motion to dismiss the indictment and strike certain allegations therein is denied in its entirety. The parties will adhere to the pre-trial schedule set forth by the court on November 25, 2009.

SO ORDERED.

Dated: Brooklyn, New York
December 7, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge

---

[6] Neither defendant nor the government addressed this issue in their papers.